FILED
2025 MAR 21 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-09020-5 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| FU ZHOU, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>PEOPLE CENTER, INC. d/b/a RIPPLING, a Delaware corporation, and RIPPLING PEO 1, INC., a Florida corporation,<br><br>        Defendants. | No.<br><br>COMPLAINT FOR DAMAGES |

## I. NATURE OF THE CASE

1. This action arises from an employment relationship between Plaintiff Fu Zhou ("Plaintiff" or "Ms. Zhou") and Defendants People Center, Inc. d/b/a Rippling ("Rippling") and Rippling PEO 1, Inc. ("Rippling PEO 1") (collectively "Defendants"). Plaintiff alleges as follows:

## II. PARTIES

2. Plaintiff is an individual residing in King County, Washington.

3. Defendant People Center, Inc. d/b/a Rippling is a Delaware corporation with its principal office in California.

4. Defendant Rippling PEO 1, Inc. is a Florida corporation with its principal office in California.

COMPLAINT FOR DAMAGES – Page 1

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

5. Defendants transact business in King County, Washington.

6. Rippling employed Plaintiff in King County, Washington at all relevant times.

7. Upon information and belief, Rippling PEO 1 performed certain human resources functions for Rippling and acted as a joint employer with Rippling.

8. Defendants are employers subject to the Washington Law Against Discrimination, RCW 49.60 et seq. ("WLAD").

9. Defendants are employers subject to the Washington Paid Family and Medical Leave Act, RCW 50A.05 et seq. ("WPFML") and WAC 192-540 et. seq.

10. Defendants are employers subject to the Washington Equal Pay and Opportunities Act, RCW 49.58 et seq. ("EPOA").

11. Defendant Rippling is an employer subject to the Silenced No More Act, RCW 49.44.211 ("SNMA").

### III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to RCW 2.08.010.

13. Venue is proper in King County pursuant to RCW 4.12.025 because the events giving rise to Plaintiff's claims took place in King County and because Defendants transact business in King County.

### IV. FACTUAL BACKGROUND

14. Plaintiff was hired by Rippling as an engineering manager in September 2021. Plaintiff is a woman.

15. Plaintiff reported to Adam Donovan ("Mr. Donovan").

16. In February 2022, Mr. Donovan alarmed Ms. Zhou by openly treating another female employee's medical leave and disability accommodation as a negative factor in her employment. On a group chat, Mr. Donovan inappropriately discussed that employee's health condition and medical leave, and he stated, "I would much rather her be on leave, or leave the company, than being nominally working but very unproductive and unpredictable." His

comments indicate that Mr. Donovan has a bias against employees taking leave, and that he views an employee with medical disabilities as likely to be "unproductive and unpredictable." Ms. Zhou was particularly troubled by this exchange because she considered this female employee to be a strong contributor, and the only reason Mr. Donovan was suddenly scrutinizing this employee's performance and assuming she would be unproductive and unpredictable was because of her medical condition.

17. Ms. Zhou had disclosed to Mr. Donovan in late 2021 and early 2022 that she was undergoing IVF treatments.

18. Ms. Zhou went on unpaid disability leave in March 2022. She provided medical paperwork to Rippling's HR department. She had previously informed Mr. Donovan that she was experiencing a health issue. At Ms. Zhou's request, Rippling agreed to extend Ms. Zhou's unpaid disability leave until June 2, 2022.

19. While on unpaid disability leave, Ms. Zhou was eligible for Washington Paid Family and Medical Leave ("WPFML").

20. Ms. Zhou communicated with an HR representative regarding her medical leave. However, Defendants failed to provide Ms. Zhou with written notice of her rights to WPFML. An employer is required to provide written notice of WPFML rights to an employee when an employer becomes aware that the employee is taking family leave or medical leave for more than seven consecutive days. Had Ms. Zhou been informed that she was eligible for paid leave, she would have exercised that right. Defendants' failure to notify Ms. Zhou caused her to miss out on this valuable benefit.

21. Ms. Zhou's unpaid disability leave concluded, and she returned to work on June 3, 2022. Upon returning, she was immediately terminated.

22. Prior to her disability leave, Mr. Donovan and Rippling had not expressed any significant concerns to Ms. Zhou about her performance.

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

23. When Mr. Donovan informed HR that he wished to terminate Ms. Zhou, HR responded by asking him whether he had documented performance issues with Ms. Zhou. Mr. Donovan admitted that there was not a history of performance documentation, and he told HR that he would need to "retroactively" document issues. He also told HR that he wanted to "move very quickly on this" rather than follow his normal practice of allowing employees to address feedback.

24. Around February 16, 2022 – just weeks prior to Ms. Zhou going on leave – Rippling gave Ms. Zhou the lead on an extremely important project. When she was given this important assignment, Mr. Donovan's boss, Jeremy Henrickson, sent Ms. Zhou a message stating that "there is a long history of things going wrong" with this project and "we need to be flawless from here on out." It is implausible that Rippling would entrust a key project that required flawless execution to an employee who had serious performance issues.

25. Mr. Donovan's attempts to "retroactively" claim Ms. Zhou had a history of poor performance is simply a pretext for discrimination and retaliation.

26. In her role as an engineering manager, Plaintiff had two direct reports, Prateek and Naman. Both of her direct reports were men. Although Plaintiff was their supervisor, Naman and Prateek were at the same level as Plaintiff within Rippling's organizational structure and had the same "engineering manager" title as Ms. Zhou.

27. Mr. Donovan told HR that Ms. Zhou's termination was necessary because Prateek and Naman were considering transferring away from Ms. Zhou's team. Ms. Zhou had noted serious issues with the performance of Prateek and Naman. Mr. Donovan was aware that these men had performance issues. In an email from January 2022, Mr. Donovan noted that Prateek was going through "some corrective actions which seem in the right ballpark." Prior to Ms. Zhou taking over the important project (referenced above), Naman was the manager on that project, and the project had struggled under his leadership. Despite the

known performance deficiencies of these two male employees, Mr. Donovan sought to protect them. He instead terminated Ms. Zhou who did not have similar performance deficiencies.

28. Mr. Donovan and Rippling did not hold male managers to similar standards as Ms. Zhou. For example, Mr. Donovan did not treat attrition as an issue warranting termination when male managers had significant attrition on their teams, including attrition on the teams of Prateek and Naman. Mr. Donovan has retroactively asserted that Ms. Zhou did not provide technical insights during team calls, but the male managers did not provide technical insights either. This is because the team calls were not about technical code questions. Similarly, Mr. Donovan has retroactively asserted that Ms. Zhou did not perform hands-on coding, but similarly situated male engineering managers did not perform hands-on coding in their roles as managers. Ms. Zhou was expressly told that the focus of her manager role at Rippling was hiring and recruiting rather than hands-on coding.

29. Mr. Donovan's retroactive critiques of Ms. Zhou's performance are nothing more than pretextual attempts to redefine her job duties after-the-fact to justify a discriminatory and retaliatory termination because of Ms. Zhou's medical issues, gender, and her actual or anticipated leave requests.

30. Upon information and belief, Ms. Zhou was replaced by a man, and Ms. Zhou's replacement was terminated shortly after expressing his own intention to take family leave – indicating that Rippling has a pattern of bias against employees exercising their rights to take family or medical leave.

31. In early 2022, Ms. Zhou asked Mr. Donovan about her pay and the opportunity to be compensated more. Mr. Donovan was not interested in addressing Ms. Zhou's compensation inquiry. Ms. Zhou was concerned that she was not receiving equal pay compared to similarly situated male employees at Rippling.

32. Had Plaintiff not been terminated, she would have been entitled to a grant of 52,500 RSUs vesting over 4 years with the first batch vesting in October 2022. Before Ms.

1   Zhou left the company, Rippling valued the scheduled October 2022 grant of 13,125 RSUs at
2   approximately $450,000. Upon information and belief, the value of the RSUs subsequently
3   increased along with Rippling's overall valuation.

4       33.     Rippling provided Ms. Zhou with a proposed separation agreement. The
5   Rippling separation agreement includes a "No Cooperation" provision that prohibits
6   employees from giving any assistance to other employees asserting claims against Rippling.
7   For instance, if a co-worker accused Rippling of sexual harassment and the victim sought
8   Plaintiff's help as a witness, the "No Cooperation" provision would require Plaintiff to "state
9   no more than that [she] cannot provide counsel or assistance" to the victim of sexual
10  harassment. This "No Cooperation" provision constitutes a significant restriction on an
11  employee's ability to speak about illegal workplace behavior. When an employee is asserting
12  claims against her employer, it is crucial that the claimant's colleagues and former colleagues
13  have the freedom to speak with the claimant (or the claimant's attorney) about what they
14  witnessed, what corroborating testimony they can provide, whether the employer has engaged
15  in a pattern of illegal behavior, *etc.* The "No Cooperation" provision in the separation
16  agreement bars employees from providing that type of assistance. The Rippling separation
17  agreement also includes a broad non-disparagement provision that would cause a reasonable
18  employee to believe that they are prohibited from disclosing or discussing discrimination,
19  harassment, retaliation, wage and hour violations, or other illegal conduct by Defendant. Ms.
20  Zhou chose not to sign the restrictive separation agreement.

## V. FIRST CAUSE OF ACTION

**DISPARATE TREATMENT ON THE BASIS OF DISABILITY IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION**

24      34.     Plaintiff re-alleges and hereby incorporates paragraphs 1 through 33.
25      35.     Defendants engaged in disparate treatment of Plaintiff because of actual or
26  perceived disabilities.

36. Plaintiff had disclosed her IVF treatments to Mr. Donovan and had informed Mr. Donovan that she was experiencing a health issue.

37. Plaintiff took disability leave as a reasonable accommodation and was terminated the day she returned from her disability leave.

38. Plaintiff's actual and/or perceived disabilities were a substantial factor in Defendants' decision to terminate Plaintiff.

39. Defendants' disparate treatment of Plaintiff violated the Washington Law Against Discrimination, RCW 49.60 *et seq*.

40. As a result of Defendants' discrimination, Plaintiff has suffered damages, including emotional distress and lost wages, benefits, and stock grants, in amounts to be determined at trial.

## VI. SECOND CAUSE OF ACTION
## DISPARATE TREATMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION

41. Plaintiff re-alleges and hereby incorporates paragraphs 1 through 40.

42. As described above, Defendant Rippling engaged in disparate treatment of Plaintiff based on her sex/gender. Defendant Rippling's disparate treatment of Plaintiff violated the Washington Law Against Discrimination, RCW 49.60 *et seq*.

43. Plaintiff was treated less favorably than male employees, and Plaintiff's sex/gender was a substantial factor in Defendant Rippling's decision to terminate Plaintiff.

44. Defendant Rippling also violated WAC 162-30-020. Mr. Donovan was aware of Plaintiff's IVF treatments and intention to become pregnant, and this was a substantial factor in the decision to terminate Plaintiff.

45. As a result of Defendant Rippling's sex/gender discrimination, Plaintiff has suffered damages, including emotional distress and lost wages, benefits, and stock grants, in amounts to be determined at trial.

## VII. THIRD CAUSE OF ACTION

## RETALIATION IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION

46. Plaintiff re-alleges and hereby incorporates paragraphs 1 through 45.

47. Defendant Rippling engaged in retaliation in violation of the Washington Law Against Discrimination, RCW 49.60 *et seq.* (the "WLAD").

48. Defendant Rippling retaliated against Plaintiff for taking disability leave as a reasonable accommodation and/or for her anticipated leave requests for actual/perceived disabilities or pregnancy/pregnancy-related conditions.

49. As a result of Defendant Rippling's retaliation, Plaintiff has suffered damages, including emotional distress and lost wages, benefits, and stock grants, in amounts to be determined at trial.

## VIII. FOURTH CAUSE OF ACTION

## VIOLATION OF THE WASHINGTON PAID FAMILY AND MEDICAL LEAVE ACT

50. Plaintiff re-alleges and hereby incorporates paragraphs 1 through 49.

51. Defendants failed to notify Plaintiff of her rights under the Washington Paid Family and Medical Leave Act, RCW 50A.05 *et seq.* ("WPFMLA").

52. WAC 192-540-010(1) provides that "[e]mployers must provide a written notice of employee rights to any employee when an employer becomes aware that the employee is taking family leave, medical leave, or a combination of both for a duration of more than seven consecutive days of work."

53. The failure to provide required notice of WPFMLA rights constitutes an interference with, restraint, or denial of the exercise of an employee's leave rights.

54. Defendants' violation of the WPFMLA has caused Plaintiff damages in an amount to be determined at trial. Plaintiff also seeks liquidated damages for the willful violation of the WPFMLA.

## IX. FIFTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF THE WASHINGTON EQUAL PAY AND OPPORTUNITIES ACT

55. Plaintiff re-alleges and hereby incorporates paragraphs 1 through 54.

56. The Washington Equal Pay and Opportunities Act, RCW 49.58 *et seq.* ("EPOA") provides that an employer may not retaliate against an employee for "[i]nquiring about…[or] otherwise discussing the employee's wages" or for "[a]sking the employer to provide a reason for the employee's wages." RCW 49.58.040(2).

57. Plaintiff's inquiry about her compensation was a substantial factor in Defendant Rippling's decision to terminate her. The termination constitutes retaliation in violation of the EPOA.

58. As a result, Plaintiff has suffered damages, including emotional distress and lost wages, benefits, and stock grants, in amounts to be determined at trial.

59. Under the EPOA, Plaintiff is entitled to double the amount of her "actual damages." *See* RCW 49.58.070(1).

## X. SIXTH CAUSE OF ACTION

## VIOLATION OF THE SILENCED NO MORE ACT

60. Plaintiff re-alleges and hereby incorporates paragraphs 1 through 59.

61. Defendant Rippling provided Plaintiff with a separation agreement that was subject to Washington's Silenced No More Act ("SNMA"), RCW 49.44.211 *et seq.*

62. Defendant Rippling's separation agreement contains a "No Cooperation" provision that violates the SNMA.

63. The separation agreement also includes a non-disparagement provision that violates the SNMA.

64. As a result of Defendant Rippling's violation of the SNMA, Plaintiff is entitled to her actual damages or statutory damages of $10,000, whichever is greater, plus attorney's fees and costs.

## XI. SEVENTH CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

65. Plaintiff re-alleges and hereby incorporates paragraphs 1 through 64.

66. Plaintiff's actual and/or anticipated family or medical leave requests were treated by Defendant Rippling as a negative factor in the decision to terminate Plaintiff. This violates public policies of the State of Washington set forth in the Washington Paid Family and Medical Leave Act, RCW 50A.05 *et seq.* ("WPFMLA").

67. As a result, Plaintiff has suffered damages, including emotional distress and lost wages, benefits, and stock grants, in amounts to be determined at trial.

## XII. PRAYER FOR RELIEF

Plaintiff Fu Zhou requests that the Court enter judgment against Defendants People Center, Inc. d/b/a Rippling and Rippling PEO 1, Inc. for the following:

a. Damages for back pay, front pay, lost stock grants, and other past and future fringe benefits, in amounts to be determined at trial;

b. Damages for emotional harm, including but not limited to emotional distress, loss of enjoyment of life, humiliation, personal indignity, embarrassment, anxiety, and anguish, in an amount to be determined at trial;

c. Statutory and/or actual damages under the Silenced No More Act;

d. Statutory and actual damages under the EPOA;

e. Costs and reasonable attorney's fees;

f. Prejudgment and post-judgment interest;

g. Compensation for the tax consequences associated with a damages award; and

h. Any further and additional relief that the Court deems just and equitable.

DATED this 20th day of March, 2025.

                        MBE LAW GROUP PLLC

By: *s/ David C. Martin*
    David C. Martin, WSBA No. 38325
    Lisa Burke, WSBA No. 42859
    1700 Seventh Ave., Suite 2100
    Seattle, WA 98101
    Telephone: (206) 400-7722
    Fax: (206) 400-7742
    Email: dmartin@mbelg.com
    Email: lburke@mbelg.com
Attorneys for Plaintiff Fu Zhou