THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FU ZHOU, an individual,<br><br>　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>PEOPLE CENTER, INC. d/b/a RIPPLING, a Delaware corporation, and RIPPLING PEO 1, INC., a Florida corporation,<br><br>　　　　　　　　　Defendants. | No. 2:25-cv-00761-BJR<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION |

## I. INTRODUCTION

Defendants required Plaintiff to simultaneously sign two separate arbitration agreements as a condition of her employment.  The two arbitration agreements contain essential terms that directly conflict with each other.  Defendants' Motion to Compel Arbitration fails to mention or address that there are two separate and conflicting arbitration agreements between the parties.  Instead, Defendants have chosen the arbitration agreement they prefer and moved to compel arbitration on that agreement while disregarding the second arbitration agreement.  When parties have multiple conflicting arbitration agreements, there is no meeting of the minds on how arbitration will be conducted, and the agreements are unenforceable.  Given the conflicting terms, there is no valid agreement, and Defendants

cannot establish that Plaintiff truly assented to the terms of either agreement. Defendants' use of the two arbitration agreements is also so confusing as to be procedurally unconscionable. No employee could possibly read these two agreements and have a clear understanding of which of these two agreements applies to employment claims against the Defendants. Plaintiff respectfully requests that the Court deny the Motion to Compel Arbitration.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Claims.

Plaintiff Fu Zhou filed her Complaint in King County Superior Court on March 21, 2025. Plaintiff has asserted claims against Defendants People Center, Inc. d/b/a Rippling ("Rippling") and Rippling PEO 1, Inc. ("PEO") (collectively "Defendants") relating to Plaintiff's employment with Defendants and her termination. *See* Dkt. 1-2. Plaintiff has asserted that Defendants violated the Washington Law Against Discrimination, RCW 49.60 *et seq.*, the Washington Paid Family and Medical Leave Act, RCW 50A.05 *et seq.* ("WPFML") and WAC 192-540 *et. seq.*, the Washington Equal Pay and Opportunities Act, RCW 49.58 *et seq.* ("EPOA"), and the Silenced No More Act, RCW 49.44.211 ("SNMA"). *See* Dkt. 1-2 (Plaintiff's Complaint).

### B.  Defendant PEO is a Joint Employer with Defendant Rippling.

Plaintiff alleges in her Complaint that Defendant PEO is a joint employer with Defendant Rippling for purposes of liability under Washington law. Dkt. 1-2. According to Defendants, PEO "is a subsidiary of Rippling" and a "co-employer for certain administrative purposes." Dkt. 15 (Declaration of Emily Frey In Support of Defendants' Motion to Compel Arbitration ("Frey Decl.")), p. 2, ¶ 5.

The question of whether Rippling PEO 1 qualifies as a joint employer under Washington law is a question of fact. That question is not before the Court on the instant Motion. Discovery has not yet been conducted on the precise nature of the relationship between the two Defendant entities.

### C. Defendants Required Plaintiff to Sign Two Separate Arbitration Agreements at the Outset of Plaintiff's Employment.

As a condition of employment, Plaintiff was required to sign two arbitration agreements. *See* Declaration of Fu Zhou in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration ("Zhou Decl."), ¶¶ 2-4. Plaintiff signed both agreements on September 22, 2021. *Id.*

One arbitration agreement is between Plaintiff and Rippling, and Defendants submitted a copy of that agreement as Exhibit A to the Frey Declaration. Dkt. 15, Ex. A. That agreement is referred to herein as "Agreement One." Agreement One is the agreement that Defendants seek to enforce with their Motion.

Defendant PEO is not expressly listed as a party to Agreement One, but Agreement One includes language stating that it applies to disputes arising out of the employee's relationship with any Rippling subsidiaries. *Id.* Defendant PEO did not file a corporate disclosure notice at the time it appeared in this action. However, according to Defendants, PEO is a subsidiary of Rippling. Dkt. 15, p. 2, ¶ 5. In their Motion, Defendants contend that this reference to subsidiaries makes Defendant PEO a third-party beneficiary of Agreement One. *See* Dkt. 14, p. 11.

Plaintiff also signed a separate arbitration agreement between Plaintiff and Defendant PEO *and* Defendant Rippling. This Agreement is referred to herein as "Agreement Two." A copy of Agreement Two is attached to the Declaration of Fu Zhou submitted herewith. *See* Zhou Decl., Ex. A.

Although Agreement Two is titled "PEO Agreement," it expressly includes both Defendant Rippling and Defendant PEO as parties. *See* Zhou Decl., Ex. A. The parties are set forth as "Fu Zhou ('Worksite Employee'), on the one hand, and People Center, Inc. ('Worksite Employer') and Rippling PEO 1, Inc. ('PEO'), on the other hand." *Id.*

Defendants did not submit Agreement Two with their Motion, but it is referenced in Exhibit B to the Frey Declaration, which displays the documents Plaintiff signed in

connection with her employment.  *See* Dkt. 15, ¶ 10 and Ex. B.  The list of signed agreements in Exhibit B to the Frey Declaration references two arbitration agreements – one labeled "US Arbitration Agreement" and the other labeled "PEO Arbitration Agreement."  *Id.*  Both agreements show a signature date of September 22, 2021.  *Id.*

Please note that references herein to "Agreement One" and "Agreement Two" are not intended to suggest that Agreement Two was entered into after Agreement One or that Agreement Two is less important than Agreement One.

**D.    Both Arbitration Agreements Expressly Apply to the Type of Employment Law Claims that Plaintiff Has Asserted in this Lawsuit.**

Agreement Two clearly states that it applies to employment law claims between Plaintiff and the Defendants:

> Included within the scope of this Arbitration Agreement are all disputes, whether based on tort, contract, statute(including, but not limited to, any claims brought under the Fair Labor Standards Act or any other similar state or local law or regulation, or claims of discrimination, harassment and/or retaliation, whether they be based on the Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act or any other similar local, state, or federal law or regulation), equitable law, or otherwise.

Zhou Decl., Ex. A (Agreement Two contains no headings or numbering, but the above-quoted provision is contained in the third paragraph).  Agreement Two also states in its very first paragraph that it applies to "disputes regarding termination of employment."  *Id.*

Agreement One likewise applies to any claims "arising out of or related to…the employment relationship, or the termination of that relationship," and lists various employment statutes as examples.  Dkt. 15, Frey Decl., Ex. A, Sec. 1.

**E.    The Two Arbitration Agreements Are in Direct Conflict on Whether a Court or Arbitrator Determines Questions Related to the Validity of the Agreements.**

Agreement Two provides that "[a]ny dispute concerning the validity, enforceability, scope or interpretation of this Agreement, or concerning the arbitrability of a particular claim,

<u>shall be resolved by a court of law</u> of competent jurisdiction." Zhou Decl., Ex A (Agreement Two, second page, third paragraph from bottom) (emphasis added).

In direct conflict, Agreement One provides that disputes or controversies "concerning the scope, validity, enforceability or breach of this Agreement, shall by resolved by final and binding arbitration...and not by a court." Frey Decl., Dkt. 15, Ex. A, Sec. 1.

### F.    The Two Agreements Have Various Conflicting Terms.

Agreement Two provides that the "[a]rbitrator shall follow and use the Federal Rules of Civil Procedure." Zhou Decl., Ex. A (Agreement Two, first page, bottom paragraph). In contrast, Agreement One does not require the arbitrator to follow the Federal Rules of Civil Procedure. Instead, Agreement One provides that the arbitrator shall use the Employment Arbitration Rules of the American Arbitration Association ("AAA"). Dkt. 15, Frey Decl. Ex. A, Section 1. The AAA Employment Arbitration Rules do not incorporate or mirror the Federal Rules of Civil Procedure. *See* Declaration of David C. Maritn in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration ("Martin Decl."), Ex. A (the AAA Rules).

Agreement Two provides that the arbitrator "shall follow…the Federal Rules of Evidence." Zhou Decl., Ex. A (Agreement Two, first page, bottom paragraph). Agreement One does not contain this provision, and the AAA Rules specifically state "[f]ollowing the legal rules of evidence shall not be necessary." Martin Decl., Ex. A (AAA Rules, R-33).

Agreement Two provides that the parties have a right to appeal to a second arbitrator: "[w]ithin thirty (30) days of the arbitrator's final written opinion and order, the opinion shall be subject to affirmation, reversal or modification, at either party's written request, following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review of a civil judgment following court trial." Zhou Decl., Ex. A (Agreement Two, second page, first

paragraph).  Agreement One does not provide any right of appeal to a second arbitrator, nor do the AAA Employment Arbitration Rules.

Agreement One specifies that the arbitration shall be with AAA unless AAA declines. *See* Dkt. 15, Frey Decl., Ex A., Sect. 1.  Agreement Two does not require the parties to use AAA to arbitrate the dispute.  *See* Zhou Decl., Ex. A.  It provides that the parties can use any qualified arbitrator they "mutually agree" upon.  *Id.* (Agreement Two, first page, bottom paragraph).  Instead of a mutually agreed-upon arbitrator, AAA uses an appointment process to assign an arbitrator from its panel.  *See* Martin Decl., Ex. A (AAA Rules, R-13).

Agreement Two does not contain any information on how arbitration costs will be allocated.  *See* Zhou Decl., Ex. A.  Agreement One provides that the employer shall pay all arbitration costs other than the AAA initial filing fee.  Dkt. 15, Frey Decl., Ex. A, Sec. 1.

The first paragraph of Agreement Two indicates that it applies to disputes between Fu Zhou "and Worksite Employer [People Center, Inc.] and/or [Fu Zhou] and PEO, including, but not limited to, disputes regarding termination of employment."  Zhou Decl., Ex. A (Agreement Two, first page, first paragraph).  However, after two full pages of dense legalistic text with no headings, Agreement Two contains a contradictory provision stating that if an employee has a separate arbitration agreement with Worksite Employer, then that separate agreement "will apply to disputes between you and Worksite Employer [People Center, Inc.], and this PEO Arbitration Agreement will apply to disputes between you and PEO."  Zhou Decl., Ex. A (Agreement Two, second page, last paragraph).  This buried provision not only contradicts paragraph one of Agreement Two, it conflicts with Agreement One's provision stating that it applies to disputes between Plaintiff and any subsidiary of Rippling (given that Defendant PEO is a subsidiary).

### III. AUTHORITY AND ARGUMENT

**A.    The Federal Arbitration Act.**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA") makes agreements to

arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. On a motion to compel arbitration, the court's role is to determine (1) whether the parties entered into a valid agreement to arbitrate, and if so (2) whether the claims fall within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proof on these questions. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If a party contests the existence of a valid arbitration agreement, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

### B. Arbitrability Must Be Decided by the Court Because the Two Agreements Are in Direct Conflict Over Whether the Court or the Arbitrator Shall Resolve Arbitrability Disputes.

The United States Supreme Court recently addressed "[w]hat happens if parties have multiple agreements that evidence a conflict over…who decides arbitrability." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143–44 (2024). The Supreme Court held that where the "parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—<u>a court must decide which contract governs</u>" rather than the arbitrator. *Id.* at 152 (emphasis added).

Here, there are two arbitration contracts between the parties. Agreement Two expressly provides that "[a]ny dispute concerning the validity, enforceability, scope or interpretation of this Agreement, or concerning the arbitrability of a particular claim, <u>shall be resolved by a court of law</u>." Zhou Decl., Ex A (Agreement Two, second page, third paragraph from bottom) (emphasis added).

Defendants' Motion relies upon the delegation provision in Agreement One and completely ignores the existence of Agreement Two, which requires the courts to decide arbitrability issues. The two agreements are in direct conflict, which means the Court must decide any questions related to validity of the agreements. *See Suski*, 602 U.S. at 152.

**C.     Both Arbitration Agreements Are Invalid Because They Contain Multiple Conflicting Provisions, which Indicates that There Was No Meeting of the Minds on the Essential Terms of Arbitration.**

To determine whether the parties agreed to arbitrate, courts apply ordinary state-law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  "The agreement to arbitrate is a contract, the validity of which courts review absent a clear agreement to not do so." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46, 470 P.3d 486 (2020).

Under Washington law, "[m[utual assent is required for the formation of a valid contract." *Id.* at 48.  For an enforceable contract to exist, the parties must "manifest to each other their mutual assent to the same bargain at the same time." *Id.*  This means that "there must be mutual assent to its essential terms." *Id.* at 49.

Where the parties have multiple arbitration agreements that conflict on essential terms, there was no meeting of the minds and therefore no valid agreement to arbitrate exists.  The Tenth Circuit examined this precise issue and found "no meeting of the minds with respect to arbitration" where the parties entered into six different contracts, each of which contained an arbitration agreement, but where the agreements conflicted regarding "(1) which rules will govern, (2) how the arbitrator will be selected, (3) the notice required to arbitrate, and (4) who would be entitled to attorneys' fees and on what showing." *Ragab v. Howard*, 841 F.3d 1134, 1136, 1138 (10th Cir. 2016).  The Tenth Circuit noted that "we cannot arbitrarily pick one to enforce." *Id.* at 1138.  The defendants in *Ragab* argued that the court should still compel arbitration because courts have compelled arbitration in other cases based on a general or vague arbitration clause that included no details.  The Tenth Circuit rejected this argument because the arbitration agreements at-issue were not "general or vague" but instead involved "multiple, specific, conflicting arbitration provisions" and "the conflicting details in the multiple arbitration provisions indicate that there was no meeting of the minds." *Id.*

A similar issue arose in *Maxine Furs of Hoover, Inc. v. Groundhog Enters., Inc.*, No. 23-CV-00641-JST, 2023 WL 6536192, at *2 (N.D. Cal. Sept. 18, 2023). The court examined how to resolve conflicting forum selection provisions in multiple contracts between the parties. The court noted that "neither provision is ambiguous; instead, each unambiguously designates either Georgia or California courts as the exclusive venue to raise disputes." *Id.* at *2. The court held that "the contradictory terms indicate that the parties had no meeting of the minds—*i.e.*, no agreement—as to venue, and the Court cannot enforce either forum-selection clause." *Id.*

Here, there are two conflicting arbitration agreements between the parties. Both agreements were created by Defendants, and Plaintiff was required to sign both as a condition of her employment with Defendants. There is no way to reconcile the two agreements. Defendants have simply picked their preferred agreement (Agreement One) and requested that the Court compel arbitration under that agreement. There is no logical or legal reason that Agreement One should apply here rather than Agreement Two. With respect to Defendant PEO, Agreement Two would be the more logical agreement to apply since it expressly states that it applies to all disputes between "you and Defendant PEO" even when there is a separate agreement between "you and Worksite Employer [Defendant Rippling]." Zhou Decl., Ex. A (Agreement Two, second page, last paragraph).

Defendants contend in their Motion that Defendant PEO was intended as a third-party beneficiary of Agreement One because Agreement One states that it applies to Rippling subsidiaries. That contention makes no sense when there is an entire separate agreement between Plaintiff and Defendant PEO. If Defendants intended Agreement One to apply to Defendant PEO, then why did Defendants ever require Plaintiff to sign Agreement Two with Defendant PEO? Defendants' argument seeks to erase the existence of Agreement Two. It would have been exceptionally easy for Defendants to have either used just one agreement or to have written two agreements with consistent terms. By using two conflicting agreements,

Defendants created a situation that prevented a meeting on the minds on the essential terms. This irreconcilability is entirely Defendants' fault.

The differences between the two agreements are over essential terms that envision very different arbitrations. The AAA Rules specified in Agreement One do not mirror the Federal Rules of Civil Procedure required by Agreement Two. The Federal Rules of Civil Procedure would ensure that Plaintiff has an opportunity to take up to 10 depositions (FRCP 30), issue 25 interrogatories (FRCP 33), and issue requests for admissions (FRCP 36). In contrast, the AAA Rules leave discovery entirely up to the whims and discretion of the arbitrator. Discovery in arbitration is almost always less extensive than discovery under the Federal Rules of Civil Procedure because services like AAA instruct arbitrators to "maximize efficiency and economy." Martin Decl., Ex. A (AAA Rules, G-1). Reduced discovery matters more to the Plaintiff because she has the burden of proof on her claims, and unlike Defendants, Plaintiff does not have easy access to the relevant internal corporate documents or easy access to the witnesses who still work for Defendants. On basic matters such as providing an Answer to the allegations in the Complaint (as would be required by FRCP 12), the AAA Rules make answering optional for Defendants. Martin Decl., Ex. A (AAA Rules, R-5). There are eighty-seven Federal Rules of Civil Procedure with various subparts, and almost none of those rules have an exact counterpart in the AAA Rules, meaning the potential conflicts with the AAA Rules are too numerous to exhaustively set forth. *Id.* Although it is hypothetically possible that a AAA arbitrator would adopt the the Federal Rules of Civil Procedure, that is highly unlikely.

Agreement Two provides that the parties have a right to appeal to a second arbitrator who shall "proceed according to the law and procedures applicable to appellate review of a civil judgment following court trial." Zhou Decl., Ex. A (Agreement Two, second page, first paragraph). Agreement One does not provide any right of appeal to a second arbitrator, nor do the AAA Employment Arbitration Rules. *See* Frey Decl., Ex. A; Martin Decl., Ex. A.

Under Agreement Two, Plaintiff would have the right to any individual arbitrator that both parties agree upon. *See* Zhou Decl., Ex. A. Under Agreement One, AAA will select an arbitrator from its panel after the parties go through a strike process. *See* Martin Decl., Ex. A (AAA Rules, R-13).

Agreement Two provides that the arbitrator "shall follow…the Federal Rules of Evidence." Zhou Decl., Ex. A. Agreement One does not contain this provision, and the AAA Rules specifically state "[f]ollowing the legal rules of evidence shall not be necessary." Martin Decl., Ex. A (AAA Rules, R-33).

As discussed above, the two Agreements also conflict over the question of who decides issues relating to validity of the agreements and arbitrability.

Much like *Ragab*, the multiple conflicting provisions show that there was no meeting of the minds on essential terms. Under Washington contract law, there must be a meeting of the minds on the essential terms for a valid contract to exist. *See e.g., Evans & Son, Inc. v. City of Yakima*, 136 Wash. App. 471, 477, 149 P.3d 691, 694 (2006). The Washington State Supreme Court has stressed that arbitration agreements are no different than other contracts in this respect. Mutual assent to the same bargain "applies to the formation of an arbitration agreement just as it does to the formation of any other contract." *Pagliacci Pizza, Inc.*, 196 Wn.2d at 48. The United States Supreme Court has also expressed a similar sentiment: "Given that arbitration agreements are simply contracts, [t]he first principle that underscores all of our arbitration decisions' is that [a]rbitration is strictly a matter of consent." *Suski*, 602 U.S. at 148. Due to Defendants' inexplicable use of conflicting agreements, it is impossible to determine what exactly Plaintiff consented to. Nothing in Washington law suggests that a court can simply choose to enforce Agreement One rather than Agreement Two. Because there was no true meeting of the minds – a problem entirely of Defendants' creation – no valid arbitration agreement exists and neither agreement is enforceable. *See Ragab,* 841 F.3d at 1134-1136.

D.  **Defendants' Use of Two Conflicting Arbitration Agreements is Procedurally Unconscionable.**

Even where an employee has assented to arbitration, an arbitration agreement may still be found void and unenforceable if it is procedurally or substantively unconscionable. *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013). Either procedural or substantive unconscionability "is sufficient to void the agreement." *Burnett*, 196 Wash. 2d at 54. Procedural unconscionability applies to impropriety during the formation of the contract. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995). The key inquiry when assessing procedural unconscionability is "the lack of meaningful choice" when considering the circumstances surrounding the formation of an agreement. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 303, 103 P.3d 753 (2004). To determine whether an agreement is procedurally unconscionable, courts examine: (1) the manner in which the contract was entered; (2) whether there was a reasonable opportunity to understand the terms of the contract; and (3) whether important terms were hidden in a maze of fine print. *Burnett*, 196 Wash. 2d at 54. These factors "should not be applied mechanically without regard to whether in truth a meaningful choice existed." *Zuver*, 153 Wn.2d at 303.

Procedural unconscionability provides an alternative ground for finding the agreements unenforceable. The two agreements are contracts of adhesion created by the Defendants, not Plaintiff. A typical non-lawyer employee could not possibly read these two conflicting agreements and understand which agreement applies to claims arising out of her employment. Both agreements expressly state that they apply to all claims relating to her employment. There was no reasonable opportunity for Plaintiff to understand the terms because the conflicting terms are incapable of being understood when read together. Compelling arbitration under Agreement One would mean that the terms of Agreement Two are rendered meaningless (no use of the Federal Rules, no right of appeal, no mutually agreed-upon arbitrator, no right to have arbitrability decided by a court, *etc.*). That is even more unconscionable than an employer burying essential terms in a maze of fine print. It would

mean an employer can create a jumbled mess of conflicting arbitration terms, an employee has no choice but to sign them as a condition of employment, and then the employer can subsequently choose which terms it prefers to enforce. Neither the Defendants nor the Court can unwind the fact that Defendants required Plaintiff to sign two conflicting agreements that both apply to employment claims. This procedural unconscionability renders both agreements void and unenforceable under Washington law.

### E. Courts Cannot Devise Special Rules to Favor or Foster Arbitration.

In their Reply, Defendants might propose that the Court adopt some inventive way to pick and choose provisions from both agreements or might propose that a general intent to arbitrate is sufficient for the Court to toss aside Agreement Two and compel arbitration under Agreement One or vice versa. Any such proposals should be rejected.

The Supreme Court has emphasized that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The federal policy favoring arbitration "is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* This means that "a court may not devise novel rules to favor arbitration over litigation." *Id.*

Here, the Defendants engaged in procedural impropriety by requiring Plaintiff to sign two conflicting agreements – preventing a meeting of the minds on essential terms. The Supreme Court has provided guidance for situations like this: "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Morgan*, 596 U.S. at 418. Procedural unconscionability strongly counsels against the enforcement of the agreements.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Arbitration. A proposed order is submitted herewith.

*I certify that this memorandum contains 4,118 words, in compliance with the Local Civil Rules.*

DATED this 17th day of June, 2025.

                                          MBE LAW GROUP PLLC

By: *s/ David C. Martin*
     David C. Martin, WSBA No. 38325
     1700 Seventh Ave., Suite 2100
     Seattle, WA 98101
     Telephone: (206) 400-7722
     Fax: (206) 400-7742
     Email: dmartin@mbelg.com
Attorneys for Plaintiff Fu Zhou

**CERTIFICATE OF SERVICE**

I certify that on June 17, 2025, I electronically filed the foregoing document using the Court's ECF system, which will cause the document to be served upon all counsel of record below:

| | |
|---|---|
| Clarence M. Belnavis, WSBA #36681<br>Meghan McNabb, WSBA #55000<br>Catharine Morisset, WSBA #29682<br>Matthew Coughlan, WSBA #56583<br>Fisher & Phillips LLP<br>1700 Seventh Avenue, Suite 2200<br>Seattle, WA 98101<br>Telephone: 206-682-2308<br>Fax: 206-682-7908<br>Email: cbelnavis@fisherphillips.com<br>Email: mmcnabb@fisherphillips.com<br>Email: cmorisset@fisherphillips.com<br>Email: mcoughlan@fisherphillips.com<br>*Attorneys for Defendants* | _____ Hand-Delivered Via Legal Messenger<br>_____ Via U.S. Mail, 1st Class, Postage Prepaid<br>_____ Via Overnight Delivery<br>_____ Via Email per agreement<br>__X__ Via ECF Filing |

By: *s/ David C. Martin*
David C. Martin, WSBA No. 38325
dmartin@mbelg.com
MBE Law Group PLLC
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 400-7722
Fax: (206) 400-7742
Attorneys for Plaintiff Fu Zhou